In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-3849

GOTOIMOANA SUMMERS,

*Plaintiff-Appellant*,

*v.*

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:15-cv-00118 — **Philip P. Simon**, *Judge*.

ARGUED MAY 17, 2017 — DECIDED JULY 19, 2017

Before WOOD, *Chief Judge*, and MANION and HAMILTON, *Circuit Judges*.

MANION, *Circuit Judge*. Gotoimoana Summers appeals from the judgment of the district court affirming the Social Security Commissioner's denial of her application for disability insurance benefits. We affirm.

## I.

On February 24, 2012, Gotoimoana Summers was fired from her job as a production-line worker in Elkhart, Indiana. She applied for disability insurance benefits shortly afterwards, alleging that she became disabled on the date she was fired. The Social Security Administration denied the application and scheduled a hearing before an administrative law judge at Summers's request. Summers attended the hearing with counsel and testified that she was unable to work because of headaches, difficulty breathing, atrial fibrillation, and dizziness with blackouts. She also submitted medical evidence indicating that she suffered from depression, anxiety, obesity, and sleep apnea. She testified that before her most recent job, she worked for an RV supply company assembling lightweight parts in an assembly line. Asked to describe a typical day, Summers replied, "Sometimes, I have bad days. Sometimes, I don't think. Sometimes, I get depressed."

Summers also made several inconsistent statements during the hearing, mostly about her work history and her use of drugs and alcohol. For instance, she initially testified that she left work for health reasons but then later admitted that she was fired. And she retracted her testimony that she had never used marijuana when the ALJ confronted her with records documenting her own previous admission to the contrary.

Toward the end of the hearing, the ALJ asked a Vocational Expert whether a hypothetical individual who was limited to

a restricted range of light work[1] could perform any of Summers's past jobs. The VE responded that such an individual could perform Summers's past job as an assembler, as well as other jobs (such as inspector and hand packager, photocopy machine operator, and palletizer) that exist in significant numbers in the national economy.

In November 2013, the ALJ issued a written decision concluding that despite her medical impairments, Summers retained the Residual Functional Capacity (RFC) to perform a substantially limited range of light work,[2] including her past work as an assembler and the other work identified by the VE. The ALJ also found that Summers was "not entirely credible" in light of her repeated inconsistent statements. Ultimately, the ALJ determined that Summers was not disabled from the time of her alleged onset date through the date of the ALJ's decision.

The ALJ's decision was upheld by the Social Security Appeals Council and became the final decision of the Commissioner. Summers appealed the Commissioner's decision to the

---

[1] Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567.

[2] An individual's RFC is what she can still do despite her limitations. SSR 96-8p.

district court, and the district court affirmed the Commissioner's denial of benefits. See 42 U.S.C. § 405(g).

## II.

We review the ALJ's decision to determine whether it applies the correct legal standard and is supported by substantial evidence. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Our review is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

Summers raises five issues on appeal. She raised the same issues below, and the district court very ably handled them in a thorough and lucid opinion. Because Summers has chosen to ignore the reasoning of the district court's opinion and instead focus exclusively on the merits of the ALJ's decision, we'll keep our remarks short. See *Castile*, 617 F.3d at 926 (noting that an appellant who fails to address the district court's analysis of the ALJ's decision engages in a "'risky tactic,' especially … where the district court [] issued a 'thorough and persuasive opinion'") (quoting *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005)).

## A. Substantial Evidence Supports the ALJ's RFC Assessment

Summers argues that the ALJ's RFC assessment is incomplete because it fails to include restrictions (like avoiding moving machinery and sharp objects) that would account for

the risk of excessive bleeding potentially associated with her use of blood thinners.

We conclude that the ALJ's RFC assessment is supported by substantial evidence. In a detailed 18-page, single-spaced decision, the ALJ thoroughly discussed the medical and other evidence and carefully considered each of Summers's impairments and related functional deficits. The ALJ then assessed an RFC limiting Summers to a significantly reduced range of light work. For example, the ALJ found that Summers was substantially limited in her ability to push, pull, stand, walk, climb, crouch, crawl, kneel, sit, balance, and stoop; that she could perform only simple, repetitive tasks in a low-stress, socially undemanding work environment; and that she had to avoid concentrated exposure to humidity, extreme temperatures, and irritants such as fumes, odors, dust, gas, and chemicals. These limitations generously account for the functional limitations that could reasonably be expected to result from Summers's medical impairments. Summers offered no evidence that her use of blood thinners put her at risk of hemorrhaging or otherwise necessitated additional functional restrictions beyond those already incorporated in the RFC. We defer to the ALJ's well-founded RFC assessment.

## B. The ALJ Adequately Developed the Record

Summers next argues that the ALJ failed to adequately develop the record by neglecting to inquire further into her testimony that she had "bad days." According to Summers, further questioning may have revealed that her bad days were so severe or frequent as to preclude full-time work.

This argument is frivolous. It was Summers's burden, not the ALJ's, to prove that she was disabled. See *Meredith v.*

*Bowen*, 833 F.2d 650, 655 (7th Cir. 1987); 20 C.F.R. §
404.1512(a)(1). The ALJ extensively questioned Summers at
the hearing and gave her every opportunity to meet that bur-
den by elaborating on the nature, frequency, and intensity of
her symptoms and related functional limitations. Moreover,
because Summers was represented by counsel at the hearing,
she is presumed to have made her best case before the ALJ.
*Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007); cf. *Nelson v.
Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997) ("*[W]hen the claimant
is unrepresented by counsel*, the ALJ has a duty to 'scrupulously
and conscientiously probe into, inquire of, and explore for all
relevant facts.'") (emphasis added). In short, the record in-
cludes ample evidence supporting the ALJ's decision, and
Summers has not identified any missing evidence that ren-
ders the record incomplete. Summers's "[m]ere conjecture or
speculation that additional evidence might have been ob-
tained in the case is insufficient to warrant a remand." See
*Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

## C. The ALJ Properly Considered Summers's Obesity

Summers also argues that the ALJ failed to adequately
consider her obesity. We see no basis for this argument. The
ALJ identified Summers's obesity as a severe impairment and
thoroughly discussed its functionally limiting effects
throughout the decision. The ALJ noted that Summers was
5'2'' and weighed at least 270 pounds since her alleged onset
date, that her BMI was between 49 and 54, and that she was
advised by her physicians to exercise and eat a healthy diet to
lose weight. The ALJ also explicitly stated that the various
postural and exertional limitations of the RFC "account for
periods of shortness of breath, and [] recognize the mobility

challenges that likely arise from obesity." The ALJ even disagreed with the state-agency consultative physician's opinion that Summers could perform work at the medium exertional level, explaining that the "extreme" "level of [Summers's] obesity alone would likely result in decreased stamina that would make work at [the medium] level of exertion a challenge." Finally, the ALJ noted that Summers weighed over 280 pounds well before her alleged onset date but was still able to work during that time despite her obesity. The ALJ adequately considered the limiting effect of Summers's obesity in combination with her other impairments, and reasonably concluded that Summers was capable of a reduced range of light work. See SSR 02-1p.

## D. The ALJ Properly Found That Summers Was Not Temporarily Disabled

Summers argues that the ALJ erred by failing to find that she was at least temporarily disabled from February 24, 2012, to May 21, 2013.[3] Summers suggests that the ALJ failed to consider her heart problems during that time.

This argument is without merit. The ALJ meticulously discussed the evidence regarding Summers's heart problems (and other health issues) from February 2012 up through the date of the ALJ's decision. For example, the ALJ noted that, though Summers was diagnosed with atrial fibrillation in February 2012, she had no heart attacks or coronary artery disease, her cardiac exams showed mostly benign results, and her condition was controlled when she took her medications

---

[3] A claimant may receive an award of temporary benefits if she is disabled for 12 months or longer, even if she later recovers sufficient health to return to work. See generally 20 C.F.R. § 404.1594.

as prescribed. For these reasons and the reasons discussed in the district court's opinion, substantial evidence supports the ALJ's decision that Summers was not disabled at any time after she was fired from her job in February 2012.

### E. Substantial Evidence Supports the ALJ's Credibility Finding

Summers next takes issue with the ALJ's partially adverse credibility finding. She argues that the ALJ should have found her credible in light of her "consistent and arduous work history."

We give the ALJ's credibility finding "special deference" and will overturn it only if it is "patently wrong." *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008). As the ALJ noted, Summers made a number of inconsistent statements concerning such questions as (1) when she stopped smoking; (2) when she stopped drinking alcohol and how much she used to drink; (3) whether she ever used marijuana; (4) whether (and why) she was fired from her most recent job; and (5) whether she returned to work after her alleged onset date. The ALJ added that Summers's allegations of disabling limitations were also frequently inconsistent with the objective medical evidence. To name just one example among many, the ALJ noted that Summers's allegations of dizziness, headaches, and blackouts conflicted with medical records showing that she consistently denied those symptoms. The ALJ properly took these inconsistencies into consideration when concluding that Summers's subjective complaints of disabling limitations were "not entirely credible."

The ALJ did not commit reversible error by failing to explicitly discuss Summers's work history when evaluating her

credibility. See *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) ("An ALJ is not statutorily required to consider a claimant's work history[.]"). Although a consistent work history weighs in favor of a positive credibility finding, it is still just "one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). See also *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) ("[A]n ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence.") (internal marks omitted).

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.