**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2018
Decided October 31, 2018

**Before**

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-2064

| | |
|---|---|
| TONI K. KELHAM, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District |
| | of Indiana, Fort Wayne Division. |
| *v.* | |
| | No. 1:17 CV 57 |
| NANCY A. BERRYHILL, | |
| Acting Commissioner of Social Security, | Theresa L. Springmann, |
| *Defendant-Appellee*. | *Chief Judge*. |

**O R D E R**

Toni Kelham, a 57-year-old woman who has had maladies including bipolar disease, auditory hallucinations, anxiety, legal blindness, and knee pain, appeals the district court's judgment upholding the denial of her application for disability insurance benefits and supplemental security income. An administrative law judge found that, despite her impairments, Kelham had the residual functional capacity to perform medium work. On appeal, Kelham argues that the ALJ improperly discounted the opinions of two consultative physicians who examined her. Not only does the record not support these arguments, it reflects that Kelham overstates both physicians' notes and at times misstates the medical history. We affirm.

**Background**

Kelham applied in 2014 for disability insurance benefits and supplemental security income based on bipolar disease, auditory hallucinations, anxiety, legal blindness, and knee pain—ailments that, she said, rendered her unable to work beginning on October 13, 2012. Her previous application for benefits was denied on October 12, 2012, so we do not discuss the medical evidence predating that decision. Further, because Kelham challenges only the ALJ's treatment of the two consultative examiners, we avoid detailing the medical and procedural history and focus instead on these physicians' assessments.

The two consultative physicians at the center of this appeal both examined Kelham in July 2014. First, medical doctor B.T. Onamusi performed a physical exam. Dr. Onamusi reported that Kelham complained of knee and hip pain and explained that these complaints were supported by "minimal objective findings." Dr. Onamusi elaborated that Kelham had "no trouble transferring onto or off the examination table" and "was able to squat, kneel and walk in tandem." On a range of motion chart, Dr. Onamusi documented impaired range of motion in Kelham's knees and lower back. Kelham's lumbar forward flexion was 85 (compared to a normal range of motion of 90), lumbar extension was 15 (compared to a normal range of 25), lateral flexion was 20 (compared to normal range of 25), and knee flexion was 130 (compared to normal range of 150). Dr. Onamusi did not comment on the significance of these findings, but in the examination notes explained that Kelham "had no demonstrable instability" in her knees or hips and a negative Patrick's Test (used to detect limited hip motion) in both hips. Dr. Onamusi opined that Kelham was "capable of engaging in light physical demand level activities."

Consultative psychologist Andrew Miller completed a mental status examination that same day. In recounting Kelham's mental-health history, he wrote that Kelham reported that she "hears voices" at work (though not since 2011, before her alleged onset date), was diagnosed with bipolar disorder in 1996, and struggles with anxiety. Dr. Miller noted that Kelham was attentive and cooperative during the examination, had sufficient understanding, and her ability to interact with him was "good." He wrote that Kelham "needs little support from others to accomplish her daily tasks," elaborating that her daily routine was simple and that she was generally capable of completing it without assistance. He also explained, however, that Kelham's "insight into her behavior and the consequences of such behavior was limited" and that she "is likely to have slight difficulty in social interactions."

At her hearing before an administrative law judge, Kelham testified about her physical ailments, stating that she has problems with her knees, especially when going up and down stairs, and that she has no trouble sitting but can only stand for about an hour to an hour and a half at a time. She testified that she can drive, and that she helps with chores at both her sister's and parents' homes. Kelham said that, hypothetically, she could do laundry for eight hours a day if she were able to sit down between loads. With regard to her mental impairments, Kelham testified that she was no longer hearing voices and that her medication "seems to be working."

The ALJ applied the five-step analysis in 20 C.F.R. § 404.1520(a)(4) and found Kelham not disabled. The ALJ determined that she had not engaged in substantial gainful activity since the alleged onset date of October 13, 2012 (step one); that Kelham's limited vision, bipolar disorder, anxiety, and borderline intellectual functioning were severe impairments (step two); that these impairments did not equal a listed impairment (step three); and that she had the residual functional capacity to perform work at the medium exertional level, but was limited to simple tasks free from fast-paced production requirements and work at unprotected heights, and which involved only "occasional interactions with the general public." With these restrictions, she could perform her past job as a "stores laborer" (doing stocking work) (step four).

In determining Kelham's residual functional capacity, the ALJ explained that Dr. Miller's assessment—which noted that Kelham had sufficient understanding, good memory, and fair concentration but limited insight—"reflected only minimal work-related limits" from any psychological conditions. But in light of "ongoing psychiatric treatment" and Kelham's testimony that she was stressed by fast-paced work, the ALJ concluded that a more "generous"—i.e., restrictive—residual functional capacity finding was appropriate. When considering Kelham's physical impairments, the ALJ gave "great weight" to Dr. Onamusi's objective medical findings, which reflected intact strength, normal gait, no instability in the knees or hips, and "fairly minor" range of motion deficits. The ALJ explained, however, that although the record did not support any physical impairment aside from impaired vision, she would implement a residual functional capacity limiting the physical exertion requirements of Kelham's work.[1]

---

[1] Although the ALJ limits Kelham to "medium" work, one time she writes that "the current residual functional capacity limits the claimant to work at the light exertional level." This appears to be an anomaly because throughout the rest of the decision the ALJ writes that Kelham could work at the medium exertional level.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The district judge upheld the ALJ's decision, noting that the ALJ explained that the record lacked evidence of physical ailments and properly evaluated the opinion evidence. We will uphold an ALJ's ruling when it applies the correct legal standard and when it is based on substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

## Analysis

On appeal, Kelham argues unpersuasively that the ALJ failed to consider the opinions of the two consultative physicians. Neither doctor, however, opines that Kelham has significant afflictions, let alone ones that might be expected to result in work-related restrictions. Nonetheless, Kelham cherry-picks (and at times misstates) observations from both examinations and argues that the ALJ should have given more weight to these particular findings.

We turn first to Kelham's physical conditions. Kelham contends that Dr. Onamusi makes "pretty explicit" findings about her "knee problem" and reduced range of motion, saying the doctor "specifically opined" that these issues were "real and limiting." But Dr. Onamusi rendered no such opinion. The only objective evidence of physical limitations is a range of motion chart indicating that Kelham had less than "normal" range of motion in her knees and lower back—but Dr. Onamusi does not elaborate on these findings or opine that a limited range of motion causes any specific restrictions. Still, the ALJ specifically addressed Dr. Onamusi's findings about Kelham's limited motion; she simply did not assign the significance to it that Kelham prefers. The ALJ instead emphasized that the remainder of Dr. Onamusi's physical examination indicates no musculoskeletal problems: Kelham had normal gait, could squat and kneel, and had no instability in her knees or hips. Kelham's assertion that we should now reweigh the evidence about her knee pain or other physical conditions is meritless. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Despite the absence of evidence of physical limitations, Kelham contends that the ALJ should have adopted Dr. Onamusi's conclusory statement that "specifically limited Kelham to a light physical range of activities." As a preliminary matter, we note that Dr. Onamusi never said Kelham was *limited* to light work, and rather opined that she "was currently capable of engaging in light physical demand level activities." When read in conjunction with Dr. Onamusi's remark that there were "minimal objective findings"

during the physical examination, it is possible that the doctor was simply noting what Kelham *could* do and did not intend to imply that she was not capable of more. Regardless, the final determination of a claimant's residual functional capacity is reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(d)(2), and thus Dr. Onamusi's opinion that Kelham could perform "light" work is not entitled to "any special significance." 20 C.F.R. § 404.1527(d)(3); *see Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

True, the ALJ cannot simply disregard a doctor's opinion about a claimant's work ability, *see Bjornson v. Astrue*, 671 F.3d 640, 647–48 (7th Cir. 2012), but that is not what happened here. The ALJ gave "great weight" to Dr. Onamusi's objective findings about the nature and severity of Kelham's medical condition; she then concluded that these findings did not support an opinion limiting Kelham to light work. This was not "playing doctor"—a stock error of which Kelham accuses the ALJ; the ALJ did not supplant the doctor's judgment in concluding that the doctor's observation of a limited range of motion did not require work-related restrictions. Nor was it the textbook error of "cherry picking." The favorable "evidence" Kelham accuses the ALJ of ignoring is the broad statement—counsel's, not a doctor's—that "knee problems and back/hip problems interrelate," as stated in an internet article that was never presented to the ALJ, as far as we can tell. The ALJ cannot be faulted for not discussing, without medical evidence in the record, that the two conditions "intuitively play off each other."

Kelham also contends that the ALJ improperly evaluated Dr. Miller's opinion about her mental limitations but, in doing so, overstates the doctor's notes and misstates the ALJ's consideration of Kelham's "limited insight." Kelham says that Dr. Miller opined that she "is impaired even as to just her ability to sustain current non-work daily tasks." In reality, Dr. Miller said that Kelham "needs little support from others" and that her ability to perform her daily tasks is "only slightly impaired," in part because those activities are simple. His notes, in fact, say that Kelham helps her mother and father with *their* errands.

Kelham also argues the ALJ erred by "not accounting for" Dr. Miller's opinion that her insight into her own behavior and its consequences was limited. But the ALJ does credit this finding, specifically commenting that Dr. Miller's notes generally did not reflect mental problems, but that "[i]nsight, however, was limited." In either case, Kelham's RFC already limits her to simple work tasks and occasional interaction with the public. It is not clear what, if any, additional restrictions would be necessary to accommodate Kelham's limited insight—nor does Kelham explain why her insight

prevents her from completing simple work tasks. Because further consideration of Kelham's insight would not have caused the ALJ to reach a different conclusion, any failure to discuss this issue further was harmless. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

Kelham also contends that the ALJ failed to consider how her borderline intellectual functioning "interacts with her bipolar and related problems to make her non-functioning." She points to no record evidence of such an interaction or that she is outright "non-functioning." Nor does she say what functional limitations the ALJ should have imposed to take further account for the supposed interaction. And because the ALJ concluded that both borderline intellectual functioning and bipolar disorder were severe impairments—and formulated an RFC including limitations imposed by these impairments—the argument is groundless.

Regardless, even if Kelham were correct that the ALJ improperly evaluated portions of these doctors' notes, that error would not be dispositive. We will uphold the ALJ's decision if it is supported by substantial evidence. *See Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). And significant evidence supports the conclusion that Kelham is able to work, including her testimony about her physical abilities and her daily activities, her reports that medications controlled her symptoms, that she has not heard voices since 2011, and that she stopped attending psychotherapy because she was "feeling good" and "like she can work." Kelham fails to explain why selective comments from a couple of doctors' notes undermine the overall substantial evidence supporting the ALJ's decision.

AFFIRMED