NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 15, 2020
Decided January 5, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-1650

| | |
|---|---|
| JACK M. HOSTETTER, JR., <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3-19-CV-00505-DGW |
| ANDREW M. SAUL, <br> *Defendant-Appellee.* | **Donald G. Wilkerson**, <br> *Magistrate Judge.* |

**O R D E R**

Plaintiff-appellant Jack Hostetter applied for supplemental security income and disability insurance benefits based on several physical ailments causing chronic foot and back pain. An administrative law judge denied his application, finding that he had the residual functional capacity to perform sedentary work with limitations. The district court upheld that determination. On appeal, Hostetter argues that the ALJ ignored evidence unfavorable to his claim and substituted her judgment for the doctors' in arriving at the residual functional capacity determination. Because substantial evidence supports the ALJ's conclusion, we affirm the judgment.

Hostetter applied in 2016 for social security disability benefits, alleging that he was disabled by back problems, including disc herniation, compression, and a pinched nerve, as well as foot problems, including heel spurs, plantar fasciitis, and left ankle fusion. He reported working as a cook, delivery driver, machinist, and crane operator before filing his application. His application was denied at all stages of review.

Hostetter asserted that the pain in his back, foot, and joints became disabling in 2012, though he did not seek treatment until late 2015. Spinal x-rays showed that he suffered from mild spondylosis (a type of arthritis) but were otherwise "unremarkable." His left ankle had been fused when he was 17 years old, his left heel had a prominent spur, and his right heel had a "tiny" spur but no other abnormalities. A spinal MRI in early 2016 showed one "mild" disc bulge and another "mild-to-moderate" disc bulge impinging on a nerve. Testing by a bone and joint specialist several months later revealed a full range of motion and no spinal or hip abnormalities. In mid-2016, Dr. Henry Davis, a rheumatologist, examined Hostetter and found limited flexion in his knees. Dr. Davis prescribed an osteoarthritis medication and a muscle relaxer. Soon after that, a pain-management specialist treated Hostetter's bulging discs with an epidural steroid injection.

During the following year, Hostetter underwent three surgeries. In early 2017, Dr. Eliot Kleinman, a podiatrist, diagnosed degenerative changes in Hostetter's left ankle and performed ankle-replacement surgery. But two months later, Hostetter tripped on the stairs of his apartment and ruptured his left Achilles tendon, which Dr. Kleinman surgically repaired. Dr. Kleinman prescribed physical therapy, but Hostetter went to only one session. Later that summer, Hostetter saw a spine specialist for back and leg pain and was diagnosed with a compression fracture in the spine. Hostetter underwent a kyphoplasty (disc fusion), and his follow-up appointments over the next half year reflected improvement.

In early 2018, Hostetter saw his primary-care physician for back pain after falling down the stairs. X-rays showed mild spinal osteoarthritis but no compression or other new abnormalities. His doctor advised him to take vitamin D and calcium, and prescribed a non-steroidal anti-inflammatory drug, muscle relaxer, osteoporosis medication, and neck exercises. This remained Hostetter's regimen through the last of his medical reports that appear in the administrative record.

In connection with Hostetter's application, reports were submitted by three of his treating physicians and two agency physicians. In mid-2016, Hostetter's primary-care

physician, Subbareddy Puchupalli, completed a disability assessment that noted Hostetter's back and foot pain but identified no objective medical conditions. Around that time, Hostetter's rheumatologist, Dr. Davis, responded to Hostetter's request for a "statement of limitations" with a short note opining that he had periods of limited mobility that "could negatively impact his ability to maintain employment." In mid-2018, Hostetter's podiatrist, Dr. Kleinman, completed a medical assessment stating that Hostetter required a cane to walk and would miss many days of work each month because of his conditions, but could sit for two hours at a time and six hours in a workday, and could operate foot controls with his right foot.

Later in 2016, two state agency consultants reviewed Hostetter's records in connection with his application. Dr. Fernando Montoya, an internist, determined that he could perform medium-exertion work with restrictions (e.g., lift up to 25 pounds; and sit, stand or walk up to six hours in a workday). *See* 20 C.F.R. §§ 404.1567(c), 416.967(c). And Dr. J. Sands, a neurologist, assessed Hostetter's capacity at only light-exertion work with restrictions (e.g., lift up to 10 pounds, sit for six hours, and stand or walk for up to two hours in a workday).

At a hearing before an ALJ in late 2018, Hostetter testified that he suffered from constant leg and back pain that was not controlled by Tylenol and a muscle relaxer. He described his pain as "excruciating" and "intolerable," preventing him from walking more than 10 minutes at a time without use of a knee scooter, sitting more than 30 minutes at a time, or lifting any amount of weight. He testified that he could climb up and down the stairs to his attic apartment, take out the trash, shop for groceries, and care for his young son. He also testified that from 2015 to 2017 he covered his rent by performing minor tasks for his landlord for 15 to 20 hours per week—delivering messages, taking out the trash, and checking on disabled residents.

A vocational expert testified that Hostetter's functional limitations prevented his resumption of all past relevant work, but that someone with his type of limitations could perform sedentary work such as a telephone-quotation clerk, charge-account clerk, or audit clerk, and that such positions existed in significant numbers in the national economy.

Applying the requisite five-step analysis, *see* 20 C.F.R. §§ 404.1520(a), 416.920(a), the ALJ determined that Hostetter was not disabled. She found that (Step 1) Hostetter had not engaged in substantial gainful activity since his application; (Step 2) his thoracic and lumbar degenerative disc disease, left ankle replacement, Achilles tendon repair,

and obesity, were severe impairments; (Step 3) none of those impairments met or equaled a listed impairment; (Step 4) he retained the residual functional capacity to perform sedentary work with restrictions; and (Step 5) as a younger person with a high school education, he could adjust to the sedentary work the vocational expert identified.

In reaching these determinations, the ALJ explained that she found Hostetter's testimony about the intensity, persistence, and limiting effects of his symptoms "not entirely consistent with the medical evidence" because Hostetter "admits more abilities than he alleges." The ALJ discounted the assessments of his other doctors as vague but gave some weight to Dr. Kleinman's opinion.

The Appeals Council denied review, making the ALJ's decision the agency's final determination. *See* 20 C.F.R. § 404.981. The district court affirmed, finding the ALJ's determination to be supported by substantial evidence.

We do not defer to the district court's decision, but we review the ALJ's decision to determine "whether it applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Hostetter faults the ALJ for discounting his subjective symptoms as "not entirely consistent" with the evidence—a formulation related to one ("not entirely credible") that we have identified as "meaningless boilerplate." *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010). Specifically, he argues that the ALJ should have given more weight to his complaints of "severe pain, stiffness, poor energy, and poor sleep," and should have questioned him about how he navigated the stairs to his attic apartment, provided childcare, and used his knee scooter to get around.

The "not entirely consistent" language is meaningless and a problem, however, only if the ALJ does not identify and explain the relevant inconsistencies or other reasons for discounting the subjective complaints. *Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018). Here, the ALJ pointed out that despite asserting an onset date of 2012, Hostetter introduced no medical records—and thus no evidence of disability—until 2015. The ALJ also permissibly weighed Hostetter's subjective complaints against testimony about his daily activities. *Burmester v. Berryhill,* 920 F.3d 507, 510 (7th Cir. 2019). Based on records reflecting that, between 2015 and 2017, Hostetter worked as a carpenter, and testimony that he did housework, shopped, and cared for a young child, the ALJ could reasonably infer that his daily activities were "somewhat greater

than he has generally reported." The ALJ's determination "need not contain a complete written evaluation of every piece of evidence" to be adequate. *Summers*, 864 F.3d at 529.

Hostetter also argues that the ALJ substituted her judgment for the doctors' assessments in coming to her RFC determination. He complains that the ALJ ignored the opinions of Dr. Puchupalli and Dr. Davis, misinterpreted Dr. Kleinman's treatment records, and "lumped" together the opinions of the state agency consultants, ignored the opinions that he described as "diverging."

The ALJ did not impermissibly "play doctor." None of Hostetter's doctors diagnosed limitations that lasted the requisite 12 months to establish disability, 20 C.F.R. § 404.1509, and neither Hostetter's doctors nor the agency consultants ever suggested that he was unable to do sedentary work. The ALJ appropriately credited Dr. Kleinman's assessment over those of the two state consultants because he actually treated Hostetter. *See* 20 C.F.R. § 404.1527(c)(2*)* (evaluating opinion evidence from treating sources)*; Hall v. Berryhill*, 906 F.3d 640, 643 (7th Cir. 2018). She also permissibly discounted the "vague" opinions of Dr. Davis and Dr. Puchupalli, neither of which identified any objective conditions. Together, Dr. Kleinman's assessment and the other medical records provide substantial evidence for the ALJ's determination that Hostetter's ambulatory and exertional limitations permitted work at a sedentary level. The judgment of the district court is therefore

AFFIRMED.