In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-1939

JENNIFER L. KARR,

*Plaintiff-Appellant,*

*v.*

ANDREW M. SAUL,
Commissioner of Social Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:19-cv-179 — **Philip P. Simon**, *Judge.*

———————————

ARGUED JANUARY 26, 2021 — DECIDED FEBRUARY 23, 2021

———————————

Before SYKES, *Chief Judge*, and EASTERBROOK and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Jennifer Karr applied for Social Security disability benefits based on her complaints of chronic lower-back pain and other ailments. An administrative law judge concluded that Karr was not disabled because she still could perform sedentary work with some restrictions. The district court upheld that determination. On appeal Karr

maintains that the ALJ improperly discounted a statement from her treating neurosurgeon that she could not sit, stand, or walk for sustained periods. But because the ALJ's decision was supported by substantial evidence, we affirm.

**I**

A

Karr challenges only the ALJ's evaluation of a treating specialist's opinion regarding her back pain, so we limit our account of her medical history accordingly. Karr traces the source of her back pain to a car accident in the late 1990s. Years later, in 2012, she consulted neurosurgeon Isa Canavati for pain, numbness, and weakness in her lower back and legs. Based on the results of an MRI, Dr. Canavati diagnosed Karr with several spinal disorders. A year later she saw a different doctor for worsening pain, and a second MRI showed mild degenerative disc disease. Over the next several years, Karr tried multiple forms of treatment, including steroid injections, physical therapy, and opioid pain medications—but none alleviated her back pain.

Karr applied for Social Security disability benefits in 2016. In connection with her application, an agency consultant examined Karr and opined that, based on her chronic back pain, she could perform "light duties with alternate sitting, standing and walking." Two agency doctors also reviewed Karr's file. They determined that she could stand or sit for about six hours in an eight-hour workday and included no sit or stand restrictions in their report.

Meanwhile, in May 2017 Karr visited the emergency room complaining of severe lower-back and leg pain and numbness about a month after she spent a day lifting heavy objects while

helping a relative move. A physician assistant examined Karr and observed that her walking and muscle strength were normal. Several months later, however, Karr remained in pain and underwent another course of physical therapy that helped some—though she still reported pain at her final session.

In November 2017, after undergoing a third MRI, Karr saw Dr. Canavati again. In a letter to Karr's referring doctor, Dr. Canavati reported that Karr was experiencing "increasing pain across the back, buttocks, dorsal thigh and calf," and that she "cannot sit, stand or walk for any sustained period of time and the pain is interrupting her sleep." Dr. Canavati then opined that Karr had "advanced degenerative disc protrusion and moderate central and foraminal stenosis." At his recommendation, Karr opted to undergo spinal fusion surgery in January 2018.

In late November 2017, Karr appeared for a hearing before an ALJ and described the back pain that radiated down her leg, which prevented her from staying in one position for a prolonged period. "I can't sit for long. I can't stand for long. I can't lay for long," she testified, adding that she needed to change positions every 15 or 20 minutes.

B

The ALJ concluded that Karr was not disabled. The analysis began with the ALJ determining that Karr suffered from many severe impairments, including degenerative disc disease. But from there the ALJ found that Karr still had the residual functional capacity or RFC to perform sedentary work with several limitations—though none involved restrictions on sitting or standing. The ALJ adopted the vocational

expert's conclusion that, although Karr could not return to her past work as a laborer or product inspector, there were still clerical jobs she could perform.

In formulating Karr's RFC, the ALJ assigned only "partial weight" to Dr. Canavati's letter. Although acknowledging that Dr. Canavati was a treating provider who had examined Karr, the ALJ found "extreme" Dr. Canavati's notation that Karr could not "sit, stand or walk for any sustained period of time" because the record contained reports of multiple physical examinations showing that Karr had full strength and could walk normally.

The district court affirmed the denial of benefits, and Karr now appeals.

## II

We will affirm a decision on disability benefits if the ALJ supported her conclusion with substantial evidence. See 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Substantial evidence is not a high threshold: it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted).

### A

Karr's sole argument on appeal is that the ALJ improperly discounted Dr. Canavati's statement in his November 2017 letter that she "cannot sit, stand or walk for any sustained period of time." Karr contends that because Dr. Canavati is a treating physician and specialist (a neurosurgeon), the ALJ should have assigned his statement controlling weight under the regulations applicable to her claim.

Substantial evidence supports the ALJ's decision not to give controlling weight to Dr. Canavati's letter. For claims like Karr's filed before 2017, the opinion of a treating physician is entitled to controlling weight if it is supported by sound medical evidence and is consistent with the record. See 20 C.F.R. § 404.1527(c)(2); *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020). Once well-supported contrary evidence is introduced, however, a treating physician's opinion becomes just another piece of evidence for the ALJ to evaluate. See *Bates v. Colvin*, 736 F.3d 1093, 1099–100 (7th Cir. 2013).

The ALJ reasonably and adequately explained why Dr. Canavati's statement was not entitled to controlling weight. For starters, it is not even clear that Dr. Canavati's statement reflects his own observation or medical opinion as opposed to a recording of Karr's own description of her condition. See 20 C.F.R. § 404.1527(a)(1) (defining medical opinions for claims filed before March 27, 2017 as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments," including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions).

To be sure, the ALJ's decision says that Dr. Canavati *opined* that Karr "cannot sit, stand or walk for any sustained period of time." But in reviewing Dr. Canavati's actual letter, it is ambiguous whether the statement represents his own clinical impression of Karr's objective limitations after reviewing the MRI and evaluating her physical condition, or whether it merely records and reports what Karr told him. The latter is a real possibility, for the statement in question appears next to other comments recording Karr's subjective complaints. We

cannot know for sure what Dr. Canavati recorded—his own opinion or Karr's account of her condition. The difference matters, as an ALJ does not owe any deference to the portion of a treating physician's opinion based solely on the claimant's subjective complaints. See *Bates*, 736 F.3d at 1100.

Even if Dr. Canavati's statement represented his medical judgment, it was inconsistent with other objective evidence in the record. Progress report notes from Karr's primary care provider in late 2016 and early 2017 indicated a normal range of motion, no back tenderness, and normal strength. The ALJ also pointed to a physician assistant's notes from Karr's May 2017 emergency room visit reporting a normal physical exam.

We recognize that Dr. Canavati had the advantage of reviewing Karr's third MRI in late 2017—a piece of medical evidence not available to the other medical professionals who interacted with Karr. Even so, that fact does not undermine our conclusion that the ALJ reached her decision based on substantial evidence. The weight of the medical record does not support a conclusion that Karr was unable to sit or stand for any meaningful period of time. We cannot say the ALJ committed any error in determining that Dr. Canavati's statement was "extreme" and not supported by other evidence in the record.

B

Karr is right to observe that the ALJ's analysis fell short in one respect: the ALJ failed to expressly analyze Dr. Canavati's statement within the multifactor framework delineated in 20 C.F.R. § 404.1527(c)(2). The ALJ should have done so. See *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). But we

cannot conclude under these circumstances that the ALJ's failure constitutes a legal error requiring reversal.

As a general rule, an "ALJ should explicitly consider the details of the treatment relationship and provide reasons for the weight given to [treating physicians'] opinions." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(c)(2)); see also *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) ("If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.").

The ALJ afforded Dr. Canavati's opinion only "partial weight" without marching through the factors referenced in § 404.1527(c)(2). All the ALJ said was that Dr. Canavati, while serving as a treating provider who personally examined Karr, offered an "extreme" opinion in light of other medical evidence. But the ALJ did not mention that Dr. Canavati was a neurosurgeon who acted as Karr's treating specialist, reviewed Karr's 2017 MRI results, or examined Karr five years earlier in 2012.

Normally a failure to apply the correct legal standard requires us to remand the case to the ALJ for further proceedings. See *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). But if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required. See *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). In making this determination, we look to the record to see "if we can predict with great confidence

what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

We have no doubt the error here was harmless. Foremost, the statement that Karr "cannot sit, stand or walk for any sustained period of time" may not even reflect Dr. Canavati's medical judgment, but instead only Karr's own account of her symptoms. Even accepting the statement as reflecting Dr. Canavati's opinion, the ALJ stood on firm ground in finding the opinion "extreme"—at odds with the weight of the other medical evidence.

Remember, too, that Karr bears the burden of proving that she is disabled. See 20 C.F.R. § 404.1512(a); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). She failed to carry that burden by not identifying any objective evidence in the record corroborating Dr. Canavati's statement. Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence. See *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

In the end, then, this appeal amounts to a failure of proof on Karr's part. She had every opportunity to present evidence aligning with and reinforcing Dr. Canavati's statement, but she did not do so. Karr pointed, for example, to no intervening event in the record supporting the change and discrepancy between her May 2017 emergency room examination and her back flare-up in late 2017 that would have corroborated the statement in Dr. Canavati's letter. And although Karr supplemented the administrative record after the ALJ hearing with post-surgery medical records reflecting her continued complaints of experiencing "the same type of pain that she was having prior to the surgery," she did nothing to give this

statement more specific content—to show that any pain she continued to experience after her surgery left her unable to perform even sedentary work.

Although we are sympathetic to Karr's situation, she has failed to muster the evidence to prove her alleged disability and entitlement to disability benefits. Mindful of the deference underpinning the substantial evidence standard, we therefore AFFIRM.