NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued May 27, 2021
Decided June 30, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2802

| | |
|---|---|
| CHAD RAY, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:19-cv-04999 |
| ANDREW M. SAUL, Commissioner of Social Security, *Defendant-Appellee*. | Timothy Adam Baker, *Magistrate Judge*. |

**O R D E R**

Chad Ray worked for years in jobs requiring heavy lifting and now suffers from chronic back pain. He sought Social Security disability benefits on the basis that he was incapable of working during a three-year period from January 2015 through December 2017. Following a hearing, an administrative law judge concluded that Ray, despite his persistent back pain, remained capable of working certain sedentary jobs and therefore was not disabled. The district court upheld that determination. On appeal Ray argues that the ALJ improperly discounted his account of his back pain, the limitations it imposes, and his treating physician's medical opinion about his inability to work.

We affirm, as we cannot say the ALJ's decision lacks evidentiary support under the deferential standard that controls our review. To be sure, the ALJ could and should have done more to evaluate the opinion of Ray's treating physician within the framework prescribed by the Commissioner's regulations. But any error was harmless given the totality of the evidence otherwise supporting the ALJ's finding that Ray had not demonstrated he was disabled during the relevant period of 2015 through 2017. In the end—and mindful that his back pain took a turn for the worse in 2018—Ray did not present enough evidence to prove that he was disabled during the relevant period.

**I**

A

Chad Ray worked for much of his life as a welder and millwright, jobs requiring much physical labor. Since 2004, however, he has experienced chronic back pain. He underwent back surgery in August 2012 to address the pain and has not worked since about that time.

Beginning in 2014, Ray started seeing Dr. Diane Zaragoza, a primary care physician, to treat his back pain. Ray's pain ebbed and flowed from 2014 through 2017. In 2015, in connection with then-ongoing child support proceedings, Dr. Zaragoza wrote a letter observing that Ray's back pain left him disabled and unable to work.

A year later, in January 2016, Ray underwent a second back surgery, this time to remove hardware implanted during the 2012 surgery. The hardware removal, Ray's physicians advised, would mitigate his continued back pain. Dr. Zaragoza's treatment notes show that the second surgery seems to have helped. Ray's back pain temporarily improved, though he still used a cane to walk.

B

In July 2016, just five months after the second surgery, Ray filed a claim for disability benefits for a three-year period beginning on January 23, 2015. Two agency consultants, Dr. J.V. Corcoran and Dr. Jerry Smartt, Jr., reviewed Ray's medical records and concluded that he could perform sedentary work with some accommodations. Another agency physician, Dr. Amanda Stram, performed a consultative examination but reported that her ability to examine Ray was limited due to his significant back pain. Dr. Stram recorded that Ray needed a cane to walk, but also that he had "5/5 strength" in his extremities and no muscular atrophy.

In August 2018, Ray, appearing in a wheelchair, testified at a hearing before an ALJ. He described serious chronic back pain that prevented him from working and

affected his family life. The ALJ also heard testimony from an impartial medical expert, Dr. Ashok Jilhewar, and a vocational expert.

Applying the requisite five-step analysis, the ALJ determined Ray was not disabled. See 20 C.F.R. § 404.1520(a). Ray, the ALJ determined, had the residual functional capacity or RFC to perform certain sedentary work during the relevant period—January 23, 2015 to December 31, 2017 (the date last insured). In making this determination, the ALJ weighed the opinion testimony offered by Ray's treating physician, the written evaluations completed by consulting physicians, and the testimony of Dr. Jilhewar, the impartial medical expert.

The ALJ discounted the opinion of Ray's treating physician, Dr. Zaragoza, after determining her views rested on the ultimate conclusion that Ray was disabled rather than on medical evidence supporting that view. The medical opinion Dr. Zaragoza did offer, the ALJ reasoned, largely parroted Ray's own accounts of his pain. By contrast, the ALJ assigned great weight to the opinions of the two agency consultants, Dr. Corcoran and Dr. Smartt, and the impartial medical expert, Dr. Jilhewar, because their opinions aligned more with the totality of the evidence in the medical record.

The ALJ then concluded, in light of the RFC determination and testimony offered by the vocational expert, that Ray could work certain sedentary jobs, including as a circuit board screener or eyewear assembler.

The district court affirmed the denial of benefits. Ray now appeals.

**II**

We will affirm a decision on disability benefits if the ALJ supported her determination with substantial evidence. See *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "[W]hatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high" in the context of disability benefits determinations. *Id.* at 1154. Indeed, substantial evidence "means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (internal quotations omitted).

**A**

Ray contends that the ALJ improperly discounted his treating physician's testimony in two ways—by neither assigning Dr. Zaragoza's opinion controlling weight nor expressly applying the factors prescribed by the Commissioner's regulations for evaluating a treating physician's opinion.

Substantial evidence supports the ALJ's decision not to give Dr. Zaragoza's opinion controlling weight. For claims like Ray's filed before March 27, 2017, a treating physician's opinion is entitled to controlling weight if it is both supported by sound medical evidence and consistent with the record. See 20 C.F.R. § 404.1527(c)(2). Once contrary evidence is introduced, however, a treating physician's opinion becomes just one piece of evidence for the ALJ to evaluate. See *Bates v. Colvin*, 736 F.3d 1093, 1099–100 (7th Cir. 2013).

The ALJ found that Dr. Zaragoza went too far by offering an opinion on the ultimate issue—whether Ray was disabled during the relevant period, a question reserved for the Commissioner. See 20 C.F.R. § 404.1527(d)(1); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'"). As for the April 2018 opinion that Ray was unable to work, the ALJ rightly pointed out that Dr. Zaragoza provided that opinion in a questionnaire that post-dated Ray's date last insured by three months. So, too, did the ALJ emphasize that, regardless of the date of that opinion, Dr. Zaragoza failed to root it in examination observations and findings from the relevant disability period. The ALJ also stood on solid ground by disregarding Dr. Zaragoza's May 2015 letter because she prepared it in connection with Ray's child support proceedings—an issue irrelevant to a disability hearing.

To be sure, Ray is right that the ALJ failed to expressly analyze Dr. Zaragoza's opinion within the framework of the factors delineated in 20 C.F.R. § 404.1527(c). Among the factors an ALJ must consider in weighing a medical opinion after deciding not to give a treating source's opinion controlling weight are the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion throughout the record. See *id.*

Generally acknowledging the regulatory factors is insufficient. See, *e.g.*, *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). While we will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion "within the multifactor framework delineated" in the regulation. *Karr*, 989 F.3d at 512; see also *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). On the other hand, we will affirm the ALJ's decision if we are confident that the ALJ's reasoning sufficiently accounted for the substance of the prescribed factors.

The written decision conveys how closely the ALJ considered Dr. Zaragoza's opinion within the context of her treatment relationship with Ray and the consistency

and supportability of her opinion. This is far from a case where the ALJ disregarded a treating physician's opinion without explanation.

To the contrary, the ALJ discounted Dr. Zaragoza's opinion for three main reasons. *First*, Dr. Zaragoza's medical opinion was inconsistent with the record as a whole, specifically the testimony given by the medical expert, Dr. Jilhewar, and the agency consultants. Where Dr. Zaragoza, for instance, concluded that Ray could not perform sedentary work because of his pain, the other medical experts determined that the evidence showed Ray capable of such work. *Second*, several of Dr. Zaragoza's conclusions reflected final determinations of disability rather than objective medical evaluations—and therefore were entitled to no weight. *Third*, the ALJ observed that much of Dr. Zaragoza's opinion merely recounted Ray's subjective pain symptoms. See 42 U.S.C. § 423(d)(5)(A) (explaining that a claimant's assertions of pain, taken alone, are not conclusive of disability). All of this, when taken together, gave the ALJ ample reason to discount Dr. Zaragoza's opinion.

B

Even if we concluded that the ALJ erred in failing to expressly consider each of the checklist factors, we would not remand for further proceedings because any error was harmless. If an error "leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required." *Karr*, 989 F.3d at 513.

We have no doubt that any error here was harmless. The record shows that, although Dr. Zaragoza did have a long treatment relationship with Ray, review of her treatment notes during this period shows little more than recordings of Ray's reported symptoms of pain and lists of prescribed medications. Consider, too, that Dr. Zaragoza's opinion, to the extent that it is a medical opinion, conflicts with the conclusions of the agency consultants and Dr. Jilhewar's testimony at the hearing. We are confident that were we to remand, the ALJ would make the same determination a second time around.

Remember that Ray has the burden of proving that he is disabled. See 20 C.F.R. § 404.1512(a); see also *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). He failed to carry that burden. Much of his case stands on Dr. Zaragoza's medical opinion, and he did little to supplement that opinion with other evidence. Perhaps even more, the other record evidence affirmatively undermined Dr. Zaragoza's opinion. For his part, Dr. Jilhewar testified that there was no record evidence of motor weakness during the relevant period. And the agency consultants, Dr. Corcoran and Dr. Smartt, opined that the evidence made clear that Ray could have performed certain sedentary work.

C

Ray also contends that the ALJ improperly disregarded Ray's subjective pain symptoms. The agency's regulations set out factors an ALJ must consider when evaluating a claimant's statements about how pain limits his ability to work. See 20 C.F.R. § 404.1529(c). The factors include the level of pain, aggravating factors, a claimant's medication, treatment, limitations, and the claimant's daily activities. *Id.*; see also *Gedatus v. Saul*, 994 F.3d 893, 903–04 (7th Cir. 2021) (more fully describing the factors).

An ALJ's findings concerning the intensity, persistence, and limiting effects of a claimant's symptoms must be explained sufficiently and supported by substantial evidence. See *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011). So long as the ALJ issues a reasoned explanation, we "will not overturn an ALJ's credibility determination unless it is patently wrong." *Id.*; see also *Gerstner*, 879 F.3d at 264. Patently wrong is a high threshold—"only when the ALJ's determination lacks any explanation or support … will [we] declare it to be 'patently wrong' and deserving of reversal." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008) (citations omitted).

Because the ALJ's weighing of Ray's reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either. Ray testified at the hearing that he had difficulty lifting, standing, walking, sitting, and needed assistance to get around. The ALJ took these complaints into account, crediting these difficulties as reasonably likely to be the result of his impairments. The ALJ also credited the account of Ray's wife, who provided a written explanation of Ray's limited abilities at home, in informing the view as to the severity and limiting effects of Ray's ailments.

But the ALJ concluded that Ray's complaints about the limiting effects of his symptoms were inconsistent with the medical evidence and testimony in the record. While crediting some limitations on Ray's ability to work, the ALJ observed that Ray would still have been able during the relevant period to perform the sedentary work identified by the vocational expert. The medical record evidence, agency consulting opinions, and the objective medical opinion of Dr. Jilhewar, the ALJ added, were at odds with Ray's statements about the severity of his symptoms. Taking all this into account, the ALJ provided sufficient reasoning to assure us that this credibility determination was not patently wrong.

### III

We close by underscoring that Ray's condition seems to have materially worsened in early 2018, after the relevant period of disability. We say this because the impartial medical expert, Dr. Jilhewar, testified that Ray's motor skills worsened in February 2018. And in April 2018, three months after Ray's last date insured, Dr. Zaragoza completed a disability questionnaire in which she stated that Ray required a wheelchair and could no longer perform even sedentary work.

But recall that the relevant period for which Ray seeks disability benefits is January 2015 to December 2017. His condition materially worsening in 2018 does not itself show that Ray was disabled during the relevant period. At the very least, we cannot say the ALJ—when presented with no express evidence connecting the 2018 downturn to conditions present during the relevant period—committed reversible error in concluding that Ray had failed to carry the burden of proving he was disabled.

The ALJ's analysis could well have been better, but there is no basis to overturn her determination, especially under the deferential standard controlling our review. Disability applicants bear the burden of proving disability—something Ray failed to do for the relevant period. We therefore AFFIRM.