In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1572

MARGARET GROTTS,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:20-cv-259 — **Reona J. Daly**, *Magistrate Judge.*

ARGUED DECEMBER 02, 2021 — DECIDED MARCH 07, 2022

Before FLAUM, EASTERBROOK, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge*. Margaret Grotts applied for Social Security disability benefits on the basis of her complaints of various impairments, including depression and low functional capacity. An administrative law judge concluded that Grotts was not disabled, because she could still perform light work with some restrictions and because a significant number of jobs fitting that description existed in the national economy.

The district court agreed. Grotts now appeals on the theory that the ALJ erred in its evaluation of Grotts's subjective complaints about her symptoms, in its evaluation of the medical opinion evidence, and in its residual functional capacity determination. But substantial evidence supported the ALJ's weighing of the medical opinion evidence and its RFC determination, and the ALJ did not patently err in its evaluation of Grotts's subjective complaints. We affirm.

## I

## A

On August 26, 2009, Margaret Grotts applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits. She has alleged a closed period of disability from January 1, 2007 to December 9, 2014. Considering Grotts's theories on appeal, we first look at her testimony and treatment before turning to the opinions of the medical professionals who treated her.

In her application for benefits, Grotts stated that she had trouble with memory, concentration, and managing stress. She also reported that she could perform limited daily activities such as taking her son to and from school, performing household chores, preparing meals, and bathing. At various evidentiary hearings, Grotts testified that she was the fulltime caretaker of one of her children and that from December 2007 to October 2009 she had a job caring for a child with disabilities. Citing bipolar disorder, Grotts described having one to three "bad days" a week and losing jobs for often being late or absent. Although she had taken certified nursing assistance (CNA) classes twice, she had not passed the final exam. Grotts

testified that she had re-entered the work force in the cleaning service industry in 2015.

For years, Grotts saw Janet Merrell, an Advanced Practice Registered Nurse (APRN), who treated her with various medications. These were often modified to alleviate side effects or increase effectiveness. Although Grotts reported low energy, forgetfulness, difficulty sleeping, stress, and anxiety, Merrell noted that Grotts's cognition was good and her functioning was fair. Another nurse, Dorothy Behrns, filled out a form describing Grotts's depression as well-controlled on her medication. Grotts also received individual therapy from Tina Otto, a professional counselor, with whom Grotts shared that she had a job interview lined up in 2009. Otto's treatment notes show that she found Grotts to have low to moderate impairment in function. Otto, together with Merrell, filled out a mental functional capacity report for Grotts in which they recorded that Grotts had bipolar and anxiety disorders, marked limitations in daily and social activities, and extreme limitations in concentration, persistence, and pace, beginning in 2006. They estimated that Grotts would consequently be absent from a job more than three times a month and reported that Grotts had one to two episodes of decompensation in 2009–10. Merrell and Mikaella Walker, a licensed clinical professional counselor, later filled out another report about Grotts, echoing the conclusions of the first and adding that Grotts had four or more episodes of decompensation from May 2012 to May 2013.

Grotts's records were reviewed by a number of state agency psychologists. Michael Cremerius, Ph.D., found that Grotts's impairments mildly restricted her daily activities, social functioning, and ability to maintain concentration,

persistence, or pace and found no repeated episodes of de-
compensation of extended duration. Dr. Cremerius rated
Grotts as not significantly limited in 13 out of 20 areas of men-
tal functioning and as moderately limited in the remaining
seven, which included capacity to understand, remember,
and carry out detailed instructions, interact appropriately
with the public, accept instructions and criticism from super-
visors, respond appropriately to changes in the work setting,
and work with peers without distracting them or being dis-
tracted by them. Another state agency psychologist, Phyllis
Brister, Ph.D., adopted Dr. Cremerius's findings for her men-
tal residual functional capacity evaluation of Grotts in May
2015.

B

There's no doubt that Grotts has been through the agency
wringer. Her case has been remanded to ALJs four times, first
by the agency's Appeals Council and then three times by the
district court. But of the five unfavorable decisions rendered
by ALJs throughout this claim's long procedural history, only
the last is the subject of this appeal. After a fifth and final hear-
ing, the ALJ denied Grotts benefits. Examining the subjective
complaints and the medical opinions laid out above, the ALJ
did not credit Grotts's complaints of symptoms, gave great
weight to the medical opinions of Drs. Cremerius and Brister,
and discounted the opinions of Merrell, Otto, and Walker. Fi-
nally, the ALJ found that Grotts had a residual functional ca-
pacity (RFC) to perform light work and a significant number
of jobs in the national economy. The district court affirmed
the final decision of the Commissioner denying Grotts's ap-
plication for disability benefits. This appeal followed.

II

We review district court judgments affirming the Commissioner's decision de novo. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). We will affirm ALJ decisions to deny disability benefits when the ALJ follows applicable law and supports its conclusions with substantial evidence. See 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "Substantial evidence is not a high threshold." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). It means nothing more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted).

A

The ALJ erred, Grotts argues, by giving great weight to the opinions of the state agency psychologists and not giving the greatest weight to the opinions of her treating nurse and therapists. We review an ALJ's decision to give more weight to state agency psychologists' opinions than to other treating professionals' opinions for substantial evidence. See *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

Grotts characterizes Janet Merrell, Tina Otto, and Mikaella Walker as "treating sources" whose opinions were entitled to be given greatest weight by the ALJ and analyzed via the multifactor framework delineated in 20 C.F.R. § 404.1527(c)(2). Grotts is certainly correct that ALJs should expressly analyze treating physicians' opinions using the § 404.1527(c)(2) factors and minimally articulate their reasoning when giving a treating physician's opinion less than controlling weight. See *Karr*, 989 F.3d at 512; *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008). But Grotts's argument that the ALJ erred in its

treatment of Merrell, Otto, and Walker presumes that the three professionals are "treating sources" under the regulations. They are not. Not all licensed medical professionals that provide treatment to a claimant are considered "treating sources" under the regulation. Rather, treating sources under the regulation must be "acceptable medical sources," 20 C.F.R. § 404.1527(a)(2), as defined in § 404.1502(a). Treating therapists are not listed. *Id.*; see also *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). And licensed advanced practice registered nurses are considered acceptable medical sources "only with respect to claims filed … on or after March 27, 2017." 20 C.F.R. § 404.1502(a)(7). For claims filed between April 2, 2007 and June 12, 2011, acceptable medical sources were limited to licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. *Id*. § 404.1513(a) (current version at *id*. § 404.1502(a)).

Grotts applied for DIB and SSI on August 26, 2009, so Merrell (APRN), Otto (therapist), and Walker (therapist) are not acceptable medical sources for purposes of Grotts's claim. And as such, the three cannot produce medical opinions or be considered treating sources under the regulations. *Id.* §§ 404.1527(a)(1)-(2), 404.1502. Instead, their opinions are governed by the lesser requirements of § 404.1527(f). For opinions not from acceptable medical sources, the application of the § 404.1527(c) factors "depends on the particular facts" and "not every factor ... will apply in every case." *Id.* § 404.1527(f)(1). An ALJ must minimally articulate its reasons for discounting non-treating sources' opinions but need not consider explicitly every factor listed under § 404.1527(c). Compare *Sosh v. Saul*, 818 F. App'x 542, 547 (7th Cir. 2020) (finding no error where an ALJ "did not explicitly consider

every factor listed under § 404.1527(c)" when evaluating a treatment provider who did not qualify as an acceptable medical source) with *Karr*, 989 F.3d at 512 (faulting an ALJ for not "marching through the factors referenced in § 404.1527(c)" when evaluating a treating physician who qualified as an acceptable medical source). Rather, an ALJ only needs to "explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. § 404.1527(f)(2). It is enough for an ALJ to summarize the findings of a non-treating source's opinion and note that those findings are not corroborated by objective evidence in the record. See *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

Here, the ALJ summarized the opinions of Merrell, Otto, and Walker, finding that Grotts had marked and extreme limitations in daily and vocational functioning. And the ALJ explained why it found those opinions inconsistent with various evidence in the record: Grotts had never been psychiatrically hospitalized; Behrns's February 2008 opinion described Grotts's depression as well-controlled; Grotts was looking for a job in April 2009, completed a CNA class, was able to maintain her household and care for her child with behavioral problems and another child with disabilities; Otto's therapy notes indicated that Grotts had only moderate impairment in functioning; and Merrell indicated that Grotts faced only moderate limitations in daily functioning.

The ALJ's treatment of these non-treating sources certainly satisfies the less stringent requirements of § 404.1527(f). The ALJ sufficiently articulated its reasoning in such a way that the claimant or subsequent reviewer could follow the

ALJ's reasoning. See 20 C.F.R. § 404.1527(f)(2). That the ALJ
did not march through each § 404.1527(c) factor in evaluating
the non-treating sources is a non-issue because "not every fac-
tor for weighing opinion evidence" applied in this case. See
*id.* § 404.1527(f)(1). The ALJ did not err in its treatment of the
opinions of Merrell, Otto, and Walker.

Grotts also argues that the ALJ erred in giving great
weight to the state agency reviewing psychologists. The ALJ
did indeed give great weight to both medical assessments, a
determination we affirm if supported by substantial evidence.
See *Karr*, 989 F.3d at 511. Preliminarily, we note that the regu-
lations consider state agency psychologists such as Dr.
Cremerius and Dr. Brister to be "highly qualified and experts
in Social Security disability evaluation." See 20 C.F.R.
§ 404.1513a(b)(1). As with all medical opinions, an ALJ must
examine the § 404.1527(c) factors and minimally articulate its
reasoning for crediting non-treating state agency medical
opinions.

Here, substantial evidence supports the ALJ's giving great
weight to the reports of Drs. Cremerius and Brister. The ALJ
found Dr. Cremerius's opinion consistent with the other evi-
dence of Grotts's social limitations and explained that Drs.
Cremerius and Brister saw much of the record, had program
knowledge, specialize in mental impairments, and supported
their own opinions with explanation. In so doing, the ALJ
used the framework of § 404.1527(c) to explain why it gave
greater weight to the opinions of Dr. Cremerius and Dr. Bris-
ter than to other opinions.

To the extent that Grotts takes issue with Dr. Cremerius's
supposed deficient treatment of the record in his opinion, we
note again that we do not review medical opinions

independently but rather review the ALJ's weighing of those opinions for substantial evidence, and we only overturn that weighing if no reasonable mind could accept the ALJ's conclusion. Grotts wants us to weigh Dr. Cremerius's opinion ourselves, but this would be no less than substituting our judgment for that of the ALJ's, an impermissible step. See *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

B

We turn next to Grotts's contention that the ALJ failed to adequately consider Grotts's subjective complaints about her symptoms. Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence. 42 U.S.C. § 423(d)(5)(A). The regulations instruct ALJs to consider a number of factors, including: (1) relevant medical evidence, including intensity and limiting effects of symptoms, 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); (2) treatment and efficacy, *id.* §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v); (3) return to gainful activity, *id.* §§ 404.1571, 416.471; (4) work during disability period, *id.*; (5) daily activities, *id.* §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); and (6) statements inconsistent with the record, *id.* §§ 404.1529(c)(4), 416.929(c)(4). An ALJ need not discuss every detail in the record as it relates to every factor. *Gedatus*, 994 F.3d at 903. Summaries of medical evidence, while definitionally "partial and selective," are appropriate. *Id.* at 901. Still, although ALJs do not need to address every piece of evidence in the record, an ALJ may not ignore an entire line of evidence contrary to its ruling. *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020). As long as an ALJ gives specific reasons supported by the record, we will not

overturn a credibility determination unless it is patently wrong. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

The ALJ, pursuant to § 404.1529(c)(2), considered the objective medical evidence during the alleged disability period. The ALJ noted the above findings concerning Grotts's moderate limitations in functioning and considered Grotts's treatments and medications and their efficacy in accordance with § 404.1529(c)(3)(iv-v). It was appropriate for the ALJ to take into account Grotts's return to full-time employment in 2014 and her continued use of the same medications and therapy. Under § 404.1571, ALJs may consider a return to gainful activity after the close of the disability period when a claimant has consistency in circumstances. See *Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008). Concerning Grotts's work during the period, the ALJ observed that Grotts took care of a child with disabilities and searched for a job. And the ALJ, in evaluating Grotts's daily activities, § 404.1529(c)(3)(i), listed Grotts's completed CNA course, her care for her two children, and her capability to keep up with daily functions like housework, cooking, driving, and attending appointments. After acknowledging Grotts's reported difficulties and limitations in doing these tasks, the ALJ pointed to certain inconsistencies between Grotts's subjective complaints and the record. See § 404.1529(c)(4); *Simila v. Astrue*, 573 F.3d 503, 518 (7th Cir. 2009) (discounting a claimant's own statements of symptoms after looking to objective facts about the claimant's life activities that contradicted the claimant's claims of subjective pain). The ALJ's reasons supporting its conclusions for these factors are the types of "specific reasons" we have found sufficient to discount subjective reports of symptoms. See *Gedatus*, 994 F.3d at 900 (affirming credibility determination where ALJ explained its reasoning and considered and recited relevant

medical history, the claimant's testimony, and the state agency physicians' opinions).

Grotts contends that the ALJ erred in its assessment of the intensity, persistence, and limiting effects of her symptoms. Nowhere, however, does Grotts point to a reversible error by the ALJ. Rather, Grotts challenges the ALJ's summaries of Grotts's activities, functioning, and medical history. And Grotts makes much of her contention that the ALJ did not address 35 matters having to do with Grotts's nurse visits. But the ALJ did not need to address every fact in the record, and none of the matters listed by Grotts show the ALJ's conclusions on Grotts's subjective complaints to be patently wrong. Nor did the ALJ fail to follow the remand directives of the district court and the Appeals Council, as Grotts seems to suggest. Neither made credibility findings about Grotts's subjective complaints binding on the ALJ. Instead, both directed the ALJ to further evaluate Grotts's subjective allegations and provide rationales to support its conclusions, which the ALJ did.

When Grotts criticizes the ALJ's analysis of her daily functioning, her good and bad days, and her pain, she is, as above, inviting us to reweigh the evidence. But "[w]hen assessing an ALJ's credibility determination, we do not … undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, we merely examine whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413. Finding the ALJ's determination reasoned and supported by substantial evidence, we again decline Grotts's offer to substitute our judgment for that of the ALJ's. See *Zoch*, 981 F.3d at 602.

## C

Grotts last argues that the ALJ erred in making its RFC determination. She incorporates her subjective complaints arguments, alleging the ALJ's conclusion cherry-picked evidence, was at odds with the record, was not supported by substantial medical evidence, and relied on faulty medical opinions. For the reasons stated in Section B, the ALJ did not err. It did not ignore an entire line of evidence, pointed to the objective evidence supporting its conclusion, and rightly weighed the opinions of the two state agency reviewing psychologists. Listing Grotts's limitations in the work environment, the ALJ supported all of its reasoning with objective evidence from the record. See *Reynolds v. Kijakazi*, 25 F.4th 470 (7th Cir. 2022). Substantial evidence supported the ALJ's RFC determination.

AFFIRMED