NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 20, 2022
Decided April 28, 2022

**Before**

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-1980

| | |
|---|---|
| ELBERT GROVE, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 1:19-CV-1183 |
| | |
| KILOLO KIJAKAZI, | William C. Griesbach, |
| Acting Commissioner of Social Security, | *Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

Elbert Grove was denied disability insurance benefits and supplemental security income. An administrative law judge concluded that Grove—assisted by a cane for ambulation—could perform a significant number of jobs in the national economy. Grove now appeals that determination, arguing that the ALJ's residual functional capacity (RFC) assessment and hypothetical posed to the vocational expert should have addressed whether Grove needed an assistive device for standing, as well as for

ambulation, and whether he needed a four-wheeled walker in addition to a cane. Grove also challenges the weight the ALJ gave to a therapist who treated him. But substantial evidence supports the ALJ's conclusions, so we affirm.

During 2013–14, Grove applied for disability insurance benefits and supplemental security income, listing a disability onset date of September 16, 2013. At a hearing on those applications, Grove testified that he was disabled because he had trouble walking and suffered from diabetes, osteoarthritis, degenerative disc disease of the lumbar spine, and depression. An ALJ disagreed. Following the regulatory structure, the ALJ looked at the objective medical evidence, medical opinions, and Grove's subjective testimony about his symptoms, concluding:

> The claimant has the residual functional capacity to perform sedentary work … except he must be allowed to use an assistive device to ambulate. He also is limited to unskilled work performing simple, routine and repetitive tasks; with individually performed work tasks; only occasional changes in his work setting, interaction with coworkers, and decision making; and no interaction with the public.

Admin. R. at 18. The ALJ rejected suggestions by some treatment providers that Grove required a four-wheeled walker, because "the overall record does not support the claimant having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities." *Id*. at 16. In other words, Grove needed a cane, but not a walker. Accordingly, the ALJ posed a routine hypothetical to a vocational expert, asking whether a person of Grove's age, education, and work experience, who can work at the sedentary level and needs a cane to ambulate, could perform a significant number of jobs in the national economy.

The ALJ gave little weight to the opinions of Peter Ruta, a licensed marriage and family therapist who treated Grove beginning in 2014. Ruta's assessments described Grove as having marked limitations in daily living and functioning and constant deficiencies in concentration, persistence, and pace, with four or more episodes of decompensation. Grove, per Ruta, was clinically depressed and suffered from post-traumatic stress disorder and panic attacks. Due to these impairments, Ruta opined, Grove would not succeed in full-time employment. The ALJ found that Ruta's opinions, which the ALJ's order did not summarize, were unhelpful because they did not include

attached treatment notes, appeared to consist only of box-checking, and were at odds with other reports in the record.

Relying on his RFC determination and the testimony of the vocational expert, the ALJ denied benefits because Grove could perform jobs that exist in significant numbers in the national economy. Grove, finding no success in the district court, appealed to us. He contends that the RFC assessment and hypothetical to the vocational expert should have also addressed whether he needed a cane for standing and included the use of a walker. And he thinks the ALJ erred in discounting Ruta's opinions.

We review ALJ decisions directly and affirm if substantial evidence supports the ALJ's conclusions, including residual functional capacity assessments. *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013). ALJs assess RFCs in steps three and four of the five-step method for deciding disability claims. See 20 C.F.R. § 416.945(a). When doing so, ALJs must include all limitations supported by the medical record—but only those. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

First, Grove simply did not argue in the district court that he required an assistive device for standing. His general challenges to the ALJ's decision about the need for assistive devices were not sufficient to preserve any argument about standing specifically. Below, Grove argued only that the ALJ's hypothetical question should have included the use of a walker rather than a cane. So any argument about Grove's ability to stand, omitted as it was before the district court, was waived. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020). In any case, no medical source even opined an assistive device was necessary for Grove to stand.

Second, the record compels us to conclude that substantial evidence supported the ALJ's determination that a cane alone would do and a four-wheeled walker was not needed. The ALJ cited and relied on at least six pieces of evidence that supported his RFC finding: diagnostic imaging showed only mild joint disease; various treatment notes demonstrated Grove had a normal unassisted gait; other notes suggested Grove's walking strength had increased from physical therapy, especially with a cane; still more notes showed good range of motion for Grove's knee; Grove had normal strength, sensation, and coordination during evaluations; and the record revealed Grove capable of biking, lifting weights, doing water aerobics, and walking for exercise. This evidence supports the ALJ's distinction between the need for a cane and the need for a walker. ALJs do not have a duty to discuss every single piece of evidence, *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021), and "[t]his is not a case where an ALJ ignored evidence

contrary to his conclusion." *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). We will not now reweigh that evidence. *Pepper*, 712 F.3d at 362. And considering that substantial evidence supported the ALJ's finding that a cane alone was needed, the ALJ cannot have erred by asking the vocational expert only whether Grove could perform a significant number of jobs in the economy assisted by a cane. See *Alvarado v. Colvin*, 836 F.3d 744, 751 (7th Cir. 2016) (an ALJ is only "required to incorporate limitations that she found supported by the evidence").

Third, Grove concedes that Ruta does not fall within the regulatory definition of an acceptable medical source, 20 C.F.R. § 404.1502(a). See *Grotts v. Kijakazi*, 27 F.4th 1273, 1277 (7th Cir. 2022). The ALJ did all that was required under 20 C.F.R. § 404.1527(f)(2) to evaluate Ruta as a treatment provider not qualifying as an acceptable medical source, minimally articulating why he discounted Ruta's opinions by noting that Ruta's findings were not corroborated by objective evidence in the record. The ALJ explained Ruta's opinions were mostly only box-checking, came with no attached treatment notes, and were at odds with other medical reports and those of Grove himself. We note, though, that ALJs should briefly summarize the opinions of non-treating sources for our review, which was not done here. See *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

AFFIRMED