In the

# United States Court of Appeals
### For the Seventh Circuit

———————

No. 22-3097

ANGELA K. CROWELL,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI, Commissioner of
Social Security,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:20-cv-00343-BHL — **Brett H. Ludwig**, *Judge.*

———————

SUBMITTED MAY 25, 2023 — DECIDED JULY 7, 2023

———————

Before EASTERBROOK, ROVNER, and LEE, *Circuit Judges.*

ROVNER, *Circuit Judge.* Angela Crowell filed an application for Supplemental Social Security Insurance benefits on February 11, 2010, alleging that she was disabled beginning August 1, 2007—a date she later revised to January 1, 2012. The Social Security Administration denied her application and she appealed. This case has a complex history with several appeals and remands through the administrative law

system and two appeals to the federal district court. For current purposes, we need focus only on the October 25, 2022 district court opinion denying Crowell's motion seeking reversal of the decision of the Social Security Administration, and the decision upon which the district court's opinion was based—that of the Social Security Administration from June 12, 2018.

We review the district court's decision de novo, but like the district court, we defer to the agency's factual findings and consider those findings to be conclusive provided they are supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[S]ubstantial evidence … is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (*quoting Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). "[W]hatever the meaning of 'substantial' in other contexts," the Supreme Court has made clear that in the disability context, "the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. We will reverse an administrative law judge's decision only if it is the result of an error of law or it is not supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation omitted). "As such, our role is extremely limited." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). But even under this deferential standard of review, an administrative law judge "must provide a logical bridge between the evidence

and [her] conclusions." *Butler*, 4 F.4th at 501 (internal quotation omitted).

Crowell asserts that the administrative law judge's decision lacked substantial evidence to support the conclusions both that Crowell was not disabled within the meaning of the Social Security Act, and that she retained a residual functional capacity for the range of work identified in the decision. This is a hard path for Crowell, however, because as we noted, the threshold for evidentiary sufficiency is not high, and our deference to the administrative law judge's findings is great. Crowell also claims that the administrative law judge erred by failing to consider properly Crowell's bipolar disorder in the residual functional capacity determination.

Crowell has submitted to this court a lengthy statement of facts, including detailed lists of every piece of evidence that supports each of her claimed disabilities. Although we have reviewed all of the facts extensively, we need not reiterate them here, as the administrative law judge weighed the evidence and adduced which of those facts to give the most credence, and, as we discuss further below, we see no reason to disturb the administrative law judge's factual determinations.[1] In broad brushstrokes, Crowell alleged that she was unable to work due to ADHD, social anxiety, fibromyalgia, bipolar disorder, borderline personality disorder, chronic pain, panic attacks, arthritis, shoulder pain, back pain, OCD, anxiety, depression, insomnia, asthma, and chronic

---

[1] A fuller rendition of the facts can be found in the administrative law judge's decision in the district court's record below at R. 9-15 at 40–54 (AR 1043–1057). We cite first to the record as it appears in the district court docket, and then to the pages as they appear in the administrative record (AR).

obstructive pulmonary disease. The administrative law judge agreed that the following impairments were severe as defined under the regulations: fibromyalgia, depressive disorder, anxiety disorder, and impairments of her left shoulder which remained after surgical correction. *Id.* at 41 (AR 1044). The administrative law judge also considered Crowell's claims that she suffered from asthma, back problems, substance abuse, and "absence" spells, but deemed that none of those conditions met the criteria of severe impairments.

In making his determination, the administrative law judge considered the reports of approximately seventeen different medical providers. For each of those reports, he summarized the evidence and then described extensively the relative weight given to each report and the reason for that decision. The judge considered Crowell's treatment history, records, her own accounts of her symptoms and activities, and those of her boyfriend and mother. He also considered the evidence in 184 exhibits (citing approximately 50 of them), carefully assessing the medical claims as well as the claims of the activities Crowell was able to perform currently, and those which she was not. It was, in short, a very thorough decision.

The administrative law judge followed the five-step process set forth in the administrative regulations for evaluating whether a plaintiff is disabled. *See* 20 C.F.R. § 416.920. In that process, "[t]he ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant

is unable to perform any other work existing in significant numbers in the national economy." *Butler*, 4 F.4th at 501 (*quoting Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005)); 20 C.F.R. §§ 404.1520, 416.920.

The administrative law judge determined that Crowell had not performed substantial gainful activity since her alleged onset of disability on January 1, 2012. He determined that of her severe impairments (listed above), none singly or in combination, met or medically equaled an impairment listed in the regulations. At step four the administrative law judge assessed Crowell's residual functional capacity, (her maximum work abilities) using treatment notes, medical opinions, and Crowell's statements regarding her activities and symptoms. [2] He concluded that she had moderate limitations in understanding, remembering, or applying information, interacting with others, and in her ability to concentrate, persist, and maintain pace. He further found mild limitations in her ability to adapt and manage herself. All of these presumptions led the administrative law judge to conclude that Crowell could perform light work involving only simple, routine, and repetitive tasks; simple work-related decisions; occasional workplace changes; and occasional interaction with the public, co-workers, and supervisors. According to his conclusions, she would have to avoid fast-paced work; concentrated exposure to unprotected heights and hazards; use of dangerous machinery; and some jobs that involved too

---

[2] The administrative law judge made extensive findings under each step of the sequence, in a nineteen-page, single-spaced opinion that set forth detailed and thorough evidence for each conclusion. We offer only a very brief summary description of the relevant evidence here. *See* R. 9-15 at 38–69 (AR 1041–1072).

much use of certain movements involving her upper extremities. Despite these limitations, the administrative law judge found that there were significant numbers of jobs in the national economy that Crowell could perform.

Crowell objects to the administrative law judge's findings that were then accepted by the district court, arguing that the administrative law judge failed to consider enough of the medical records, and to give sufficient weight to the opinions of the treating providers. An administrative law judge, however, is not required to spell out in the record every piece of evidence that he considered and then accepted or rejected. *Gedatus*, 994 F.3d at 901; *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("[A]n ALJ is not required to list each document he considered, but must only weigh the relevant evidence."). It is enough that the administrative law judge build a logical bridge between the evidence and his conclusions. *Butler*, 4 F.4th at 501. This he did.

One of Crowell's primary complaints is that the administrative law judge should have given controlling weight to her treating physician, Dr. Gary Steele, rather than rely so heavily on the opinions of state agency psychologists Dr. Roger Rattan and Dr. Stacey Fiore. An administrative law judge, however, is not obligated to give controlling weight to the treating physician if he finds that opinion not worthy of such weight. *See, e.g.*, *Prill v. Kijakazi*, 23 F.4th 738, 750–51 (7th Cir. 2022). In this case, the administrative law judge considered the fact that Crowell had asked Dr. Steele to provide her with a letter describing her disabilities, but Dr. Steele initially refused, stating that most of her ailments concerned her mental health and he "advised her that [he] did not think [he] was the appropriate person to fill" out the

forms, as he was not a psychiatrist. R. 9-3 at 158 (AR 454). Moreover, the judge noted that although Dr. Steele concluded that she was unable to hold a job due to her mental impairments and pain, he also made clear that "supporting this contention will require that [Crowell] visit with a physiatrist and a psychiatrist for specific evaluation and recommendations." R. 9-3 at 108 (AR 404). He eventually capitulated and issued an opinion stating that Crowell had several marked mental limitations due to anxiety disorder with panic, and that she could not tolerate even low stress work. The administrative law judge decided to give little weight to Dr. Steele's opinions, finding that they were rendered well before the relevant period, and some of his assertions were "vague, conclusory, outside his area of expertise (he has no vocational training), and are factual findings reserved for the Commissioner." R. 9-15 at 50–51 (AR 1053–54). Additionally, the administrative law judge found that Dr. Steele's opinions were "not consistent with subsequent records showing the claimant had improved with treatment and counseling … ." *Id.* at 51 (AR 1054). It was certainly within the administrative law judge's reasonable discretion to decide that Dr. Steele's medical opinion was deserving of less weight. An administrative law judge may choose to give more weight to the state agency psychologists provided the judge examines the appropriate factors under agency regulations and minimally articulates its reasoning for crediting the opinions of the non-treating agency medical experts. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Factors that an administrative law judge might consider include the length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported the medical opinions with sufficient explanations,

and whether the physician specializes in the medical conditions at issue. *Elder*, 529 F.3d at 415. Although the judge did not note the length of the treatment relationship, he did discuss the sufficiency of the doctor's explanations and his credentials relative to the claimed disability. An administrative law judge may also discount a treating physician's opinion where the judge suspects that the treating physician might be "bend[ing] over backwards to assist a patient in obtaining benefits." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). At the end of the day, once the administrative law judge properly considers these factors, "we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons— a very deferential standard that we have, in fact, deemed 'lax.'" *Elder*, 529 F.3d at 415 (cleaned up) (*citing Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). We conclude that the administrative law judge properly considered Dr. Steele's opinion, articulated his reasons for giving it less weight, and was within his discretion for giving it the weight he did.

In addition to supporting the decision about what weight to give Dr. Steele's opinions, the administrative law judge meticulously discussed each of the approximately seventeen medical providers who offered opinions on Crowell's condition and abilities. He explained the amount of weight he gave to each opinion and why. For example, as noted, he gave the most weight to the opinions of state agency providers Dr. Fiore and Dr. Rattan, as he found that their opinions, read as a whole, were consistent with the overall record showing that Crowell's longstanding panic disorder, anxiety, and depression were controlled with treatment. To support this conclusion, the judge pointed to several different exhibits for evidence that Crowell's mental health conditions improved and

were well-controlled with medication, including evaluations by treating providers Kathleen Ludwikowski, APNP, and Dr. Candace Cohen, and consultative psychologist, Dr. Leslie Baird. R. 9-15 at 46, 49, 50, 52–54 (AR 1049, 1052, 1053, 1055–57). The administrative law judge did more than minimally support his reasoning. He gave very full explanations of why he believed that Drs. Fiore and Rattan's opinions were supported by the record as a whole. *See Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011) (An administrative law judge who chooses not to assign controlling weight to a treating physician's opinion must "articulate sufficient reasons for not doing so.").

In forming the residual functional capacity, the administrative law judge primarily considered the limitations described by the reports of Drs. Fiore and Rattan, as well as other evidence of Crowell's improved mental health, and her demonstrated abilities. For example, the judge noted that she was able to babysit both for others, and for her boyfriend's son in her home, and was able to prepare meals, go to doctors' appointments, take medications, shop, read, play games, comply with treatment, and participate in her healthcare and in the legal proceedings. He agreed that the evidence supported the assessments of Drs. Fiore and Rattan which concluded that Crowell remained moderately limited in the areas of understanding, remembering, or applying information; maintaining concentration, pace, and persistence for extended periods of time; and interacting with the public. He furthermore agreed that she had mild limitations in her ability to manage her mood and adapt to change. Consequently, he included all of those limitations in the residual functional capacity analysis. The administrative law judge assumed that Crowell would be limited to "simple, routine, and repetitive

tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and occasional interaction with the public, co-workers and supervisors." R. 9-15 at 43 (AR 1046). He also included limitations on exposure to heights, hazards, and dangerous moving machinery, along with restrictions that took into account her shoulder immobility. In some places he included restrictions that were more generous to Crowell than Drs. Rattan and Fiore advised, for example, by noting her limited ability to interact with others. And in other instances, he rejected Drs. Fiore and Rattan's opinions. For example, he concluded that the evidence did not support moderate limitations in her abilities to complete a fairly normal work schedule and to work in coordination with or in proximity to others without distraction. The administrative law judge supported these latter conclusions with evidence from the medical providers' reports, and evidence of her improved mental state, babysitting and caregiving history, and ability to concentrate while reading. In sum, the administrative law judge described any areas of disagreement with the experts and provided supporting evidence any time he deviated from their assessments of her abilities.

Crowell takes particular exception to the administrative law judge's use of her babysitting work and Facebook usage as evidence of her ability to perform work in the economy. The administrative law judge, however, could certainly consider her part time work babysitting in his big-picture evaluation of her capabilities. *See, e.g.*, *Berger*, 516 F.3d at 545–46. Although it is true that "there are critical differences between keeping up with activities of daily living and holding down a full-time job," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 776 (7th Cir. 2022 (internal quotation omitted), an administrative law judge "is not forbidden from considering statements about a

claimant's daily life. In fact, agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) (*citing* 20 C.F.R. § 404.1529(a), (c)(3)). The judge was well within his discretion in considering Crowell's ability to care for her own children and others as well as her ability to keep up with daily living functions. *See, e.g.*, *Grotts*, 27 F.4th at 1279.

Crowell spends some time arguing about whether the administrative law judge should have considered the hours she whiles away on Facebook as a reflection of her ability to work. Were we weighing evidence on our own, as a matter of first impression, we might come to different judgments about whether spending hours on idle tasks on Facebook accurately reflects on one's ability to concentrate on productive tasks in the economy. However, this was a judgment call for the administrative law judge, and not this court. *See Gedatus*, 994 F.3d at 900. And, in any event, the judge's application of this fact was minimal in the larger picture. The administrative law judge considered all of the substantial evidence described above in formulating his assessment, including Crowell's part-time employment as a babysitter, her ability to care for her boyfriend's autistic child, her ability to read novels (even if limited, as Crowell asserts, to thirty minutes at a time), her limited leisure activities, and ability to comply with medical treatment. We cannot say that the assessment was not supported by substantial evidence, and the judge certainly spent considerable time explaining the logic used to connect the evidence to his conclusions.

Crowell's brief reiterates all of the evidence that she believes the administrative law judge overlooked, but as we

have noted, he was not required to list everything he considered. *Loveless*, 810 F.3d at 507. Crowell's arguments amount to disagreements with the administrative law judge's conclusions, and we decline her invitation to reweigh the evidence. *Grotts*, 27 F.4th at 1279 ("[w]hen assessing an ALJ's credibility determination, we do not ... undertake a de novo review of the medical evidence that was presented to the ALJ. Instead, we merely examine whether the ALJ's determination was reasoned and supported.") (*citing Elder*, 529 F.3d at 413).

Crowell also contends that the administrative law judge erred by failing to include bi-polar disorder in step two of the analysis. If this was error, it was harmless. Although it is true that the administrative law judge did not specifically list bipolar disorder at step two as one of Crowell's severe impairments, he did consider her bipolar disorder when analyzing her mental health. At the start, the administrative law judge mentioned that Crowell alleged that she had been unable to work since January 1, 2012, due to bipolar disorder, among other conditions. R. 9-15 at 44 (AR 1047). And then, when listing the psychological conditions he was considering, he specifically mentioned her "fluctuating moods of euthymia and depression" and that both treating and examining providers diagnosed Crowell with bipolar disorder (along with depression, anxiety disorder, OCD, panic disorder, and avoidant personality disorder). *Id.* at 46 (AR 1049). The administrative law judge also considered the March 2016 psychological consultative examination by Dr. Baird wherein she diagnosed Crowell with, among other conditions, bipolar disorder. Although the administrative law judge gave limited weight to Dr. Baird's assessments of Crowell's ability to work, there is no indication that the judge ignored her mental health diagnoses. The administrative law

judge also considered the stability of her mood as assessed in 2012 and 2015 after medication. Crowell asserts that her bipolar disorder caused mood swings, depression, panic attacks, poor decision-making, crying at work, aggressive and irritable behavior, and the "inability to safely care for her 6 children." Crowell Br. at 32–33. The administrative law judge discussed these symptoms—mood swings, R. 9-15 at 43, 46 (AR 1046, 1049); depression, *id.* at 44, 46–47, 49 (AR 1047, 1–49–50, 1052); panic attacks, *id.* at 44, 46–47, 49–51 (AR 1047, 1049–50, 1052–53); crying spells, *id.* at 46 (AR 1049); and irritability and difficulty managing anger, *id.* at 42, 46 (1045, 1049). He considered each of these symptoms when crafting the residual functional capacity assessment.

In short, the administrative law judge did not ignore Crowell's bipolar disorder. Instead, he concluded that when considering all of the evidence, despite Crowell's asserted claims that she has difficulty managing her mood, those impairments did not meet the criteria for a disability as defined in the Social Security Act.

Having found the administrative law judge's conclusions to be supported by substantial evidence and no error affecting those conclusions, we AFFIRM the decision of the Commissioner of Social Security.