In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 24-1632

LAURIE JEAN YOKOSH,

*Plaintiff-Appellant,*

*v.*

FRANK BISIGNANO,
Commissioner of Social Security,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:22-cv-00949 — **Brett H. Ludwig**, *Judge.*

———————

ARGUED JANUARY 15, 2025 — DECIDED MARCH 19, 2026

———————

Before ROVNER, JACKSON-AKIWUMI, and MALDONADO, *Circuit Judges.*

MALDONADO, *Circuit Judge.* Laurie Yokosh appeals the partial denial of her application for Social Security disability benefits. This case has a lengthy history with remands from both the district court and the Social Security Appeals Council. But our review today is limited to the Administrative Law Judge's ("ALJ") most recent determination that Yokosh was

not disabled from August 14, 2015, to August 31, 2017, and therefore not entitled to benefits for that time. Yokosh argues that the ALJ improperly discounted the opinion of her treating psychologist. But the ALJ considered the relevant factors and offered well-supported reasons for giving this opinion little weight. We review with deference and affirm.

## I. Background

### A. Personal and Medical History

Yokosh is 63 years old. She holds a GED and has worked in various roles, including as a customer service representative, a receptionist, and most recently a bookkeeper at her brother's company. Yokosh's brother provided accommodations because of her medical problems and eventually allowed her to reduce to part-time hours. Yokosh stopped working in August 2015.

Yokosh has struggled with mental and physical impairments, but her chronic back pain was the main reason she stopped working. She sought treatment in July 2015, and x-rays showed degenerative spondylosis (spinal osteoarthritis) and mild scoliosis. Yokosh began physical therapy and started taking anti-inflammatory medication, both of which she reported provided mild relief a month later.

Seeking further treatment, Yokosh visited a specialist in spinal disorders. She received an MRI, which showed multi-level degenerative disc disease, and was referred to a pain management specialist to treat neck, back, and hip pains. She was prescribed medication and received a series of steroid injections and ablation procedures that provided some short-term relief. Yokosh's pain continued to worsen, and in 2019

she underwent left hip replacement surgery because of osteo-arthritis.

The toll of Yokosh's physical pain triggered mental health issues, which had been dormant for some time. (Yokosh had previously been diagnosed with bipolar disorder and had received Social Security disability benefits from 2000 to 2006 while she received treatment.) In November 2015, she visited Dr. Roland Manos, Ph.D., for a mental status examination.

Dr. Manos reported that Yokosh shared that she had weaned herself off her psychotropic medications in 2007 and had experienced "occasional episodes of anxiety" but no "extreme mood swings" since then. Yokosh felt "frustrated" and "concerned" about her health but not "hopeless." Dr. Manos and Yokosh discussed her daily activities (including rolling cigarettes, reading, and watching television), hobbies (including playing cards and cooking), and social activities (including getting together with friends and family). Yokosh also told Dr. Manos that she had "no difficulty concentrating on her job duties," but that her pain affected her persistence. Dr. Manos reported that Yokosh was able to correctly complete a series of activities testing memory, knowledge, concentration, and abstract reasoning. Based on these results and Yokosh's overall presentation, Dr. Manos diagnosed her with depression and anxiety and opined that she could understand and remember simple instructions, had no difficulty interacting with others, could maintain concentration, could cope with routine work stress, and could adapt to changes in the work environment.

In June 2016, Yokosh began receiving psychotherapy treatment twice a month from Dr. Itzhak Matusiak, Ph.D., a clinical psychologist specializing in pain management. Yokosh

told Dr. Matusiak about her frustrations dealing with her pain, sharing that she struggled with self-worth and despair, and Dr. Matusiak advised her on various coping mechanisms. In late 2016, Dr. Matusiak described Yokosh as having a "better outlook," though still frustrated by her "diminished current functionality." During her sessions, Yokosh also discussed her frustrations with her boyfriend and the various activities she engaged in such as rolling cigarettes, shoveling snow, gardening, cooking, baking for the holidays, and traveling.

In November 2016, five months after he began treating her, Dr. Matusiak evaluated Yokosh using the P-3 Test, a psychological assessment used to assess the mental status of individuals suffering from chronic pain. Dr. Matusiak interpreted Yokosh's scores and concluded that she was able to "read the test items and appropriately attend to their content"; that she had "higher than average levels of anxiety"; and that her symptoms of anxiety, depression, and somatization were significant enough to "cause concern that elevated situational stress demands, mood swings, and perhaps even ordinary life reversals could cause [her] to lose control." Based on these test results, Dr. Matusiak opined that Yokosh had mild limitations in understanding, remembering, or carrying out simple instructions; moderate limitations in her ability to make judgments on simple work-related decisions; marked limitations with complex instructions, interacting with others, and responding appropriately to changes at work; and extreme limitations in making judgments on complex work-related decisions. He also opined that Yokosh had "significant problems" with short-term memory, attention, and concentration as well as depression and anxiety. Yokosh's mood and

psychological symptoms continued to fluctuate, but she stopped seeking treatment from Dr. Matusiak in June 2017.

In 2022, a psychological expert, Dr. Michael Rabin, Ph.D., reviewed Yokosh's record. He opined in a hearing that Yokosh had "persistent depressive disorder with mixed anxiety and depressed mood" but that she had only mild limitations in mental functioning. Dr. Rabin generally agreed with Dr. Manos's assessment, though he was not convinced Yokosh needed to be limited to simple work. Dr. Rabin also explained that he was unable to assess the reliability of Dr. Matusiak's opinion and report because no test scores had been provided.

## B. Administrative Proceedings

Yokosh applied for disability insurance benefits in September 2015, alleging that she had been disabled since August 14, 2015. The application was originally denied, but her case was remanded twice. First, in 2019, on the parties' stipulation, the district court remanded, the case was assigned to a different ALJ, and that ALJ determined that Yokosh had become disabled on November 26, 2017. Then, in 2021, the Social Security Appeals Council remanded again, directing the ALJ to further review whether Yokosh was disabled before November 26, 2017. In 2022, the ALJ held a hearing, where two medical experts and a vocational expert testified, and determined that Yokosh had become disabled on September 1, 2017. No one is contesting the conclusion that Yokosh was eligible for benefits starting September 1, 2017, so we focus our discussion on the determination that she was not eligible for benefits before then.

The ALJ applied the five-step analysis established in 20 C.F.R. § 416.920(a)(4). At step one, the ALJ concluded that

Yokosh had not engaged in substantial gainful activity since the alleged onset of her disability on August 14, 2015. At step two, the ALJ determined that Yokosh had several severe physical impairments: degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the left hip, and small fiber neuropathy. The ALJ also determined that Yokosh's mental impairments, namely depression and anxiety, were non-severe because she had only mild limitations in the four areas of mental functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself). At step three, the ALJ concluded that, prior to September 1, 2017, Yokosh's severe impairments did not meet or medically equal a listing for presumptive disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Before moving to step four, the ALJ determined Yokosh's residual functional capacity ("RFC") prior to September 1, 2017. The resulting RFC included findings that Yokosh could occasionally bend, stoop, reach overhead, lift from the floor, and climb ladders. It did not include a limitation on engaging in complex tasks. Finally, at step four, the ALJ concluded that, based on her RFC, Yokosh was capable of performing her past relevant work as a bookkeeper. The ALJ therefore determined that Yokosh was not disabled prior to September 1, 2017.

At issue in this appeal is the finding at step two that Yokosh's mental impairments were non-severe. Specifically, Yokosh disagrees with the ALJ's decision to give "little weight" to Dr. Matusiak's opinion that Yokosh was limited in performing complex work tasks. The ALJ explained that he discounted this opinion for several reasons. To start, Dr. Matusiak's opinion was inconsistent with other information in the record, including the test results and conclusions of

other experts, all which indicated that Yokosh had only mild limitations in mental functioning. In addition, Dr. Matusiak's treatment notes—which did not indicate significant limitations in memory, attention, concentration, ability to interact, or mood—did not support his conclusions. In fact, the limitations Dr. Matusiak identified were inconsistent with some of Yokosh's own reports of her activities. Further, Dr. Matusiak had only seen Yokosh for five months at the time he provided his opinion. Finally, the ALJ noted that the "conservative" treatment Dr. Matusiak was providing appeared to be the appropriate level of care for Yokosh.

## C. District Court Proceedings

Yokosh sought review in federal court, arguing that the ALJ failed to provide good reasons for rejecting Dr. Matusiak's opinion that she had difficulties engaging in complex work tasks.[1] The district court affirmed the ALJ's decision, finding that he adequately articulated his reasons for discounting the opinion. The court also agreed with the Commissioner that even if the ALJ had included a limitation in the RFC precluding complex tasks, consistent with Dr. Matusiak's opinion, Yokosh still would have been found not disabled for the relevant time frame because a vocational expert testified (and no one disputed) that over 2,000,000 jobs were available in the national economy for someone with Yokosh's RFC. In other words, any error was harmless. Yokosh appeals.

---

[1] Yokosh also challenged a determination by the ALJ that she did not have a severe eye impairment prior to September 1, 2017, but she does not raise that issue on appeal, so we discuss it no further.

## II. Discussion

We review the district court's affirmance of the ALJ's decision de novo, but "we defer to the agency's factual findings[.]" *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023). And we will reverse an ALJ's decision "only if it is the result of an error of law or it is not supported by substantial evidence, which is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)).

Yokosh's primary argument on appeal is that the ALJ erred in discounting Dr. Matusiak's opinion about her ability to perform complex work.[2] If the ALJ had given more weight to this opinion, Yokosh contends, her RFC would have limited her to simple work-related tasks and decisions, which would not have included her previous work as a bookkeeper, and she likely would have been found disabled and entitled to benefits.

For claims filed before 2017, like Yokosh's, the opinions of treating physicians can, under certain circumstances, be given controlling weight.[3] *See* 20 C.F.R. § 404.1527(c)(2); *Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023). But an ALJ may give less weight to an opinion that is, for example, inconsistent with the opinions of other physicians, internally inconsistent, or based solely on the patient's subjective complaints. *Baptist*, 74 F.4th at 444. In doing so, the ALJ must "examine[] the

---

[2] Yokosh also challenges the district court's apparent willingness to affirm on harmless error grounds. Because we conclude that the ALJ committed no error, we need not address this argument.

[3] The agency revised certain relevant regulations for claims filed on or after March 27, 2017.

appropriate factors under agency regulations"—which include the length, nature, and extent of the physician and claimant's treatment relationship; whether the physician supported his opinion with sufficient explanation; and whether the physician specializes in the medical conditions at issue—and must "minimally articulate[] [his] reasoning[.]" *Crowell*, 72 F.4th at 816; 20 C.F.R. § 404.1527(c). This is "a very deferential standard that we have, in fact, deemed 'lax.'" *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Here, the ALJ considered the relevant factors and offered well-supported reasons for giving Dr. Matusiak's opinion "little weight."

First, the ALJ identified inconsistencies between Dr. Matusiak's opinion and other evidence in the record. For example, the ALJ noted that the record showed Yokosh presenting "with generally normal psychiatric symptoms," which was inconsistent with Dr. Matusiak's opinion that she had significant limitations due to mental impairments. The ALJ correctly observed that the treatment notes "generally indicate that she had an appropriate mood, appropriate affect, normal interactions, and normal behavior," and describe her as "pleasant and cooperative."

Additionally, Dr. Matusiak's opinion was at odds with the opinions of Dr. Manos (who reported that Yokosh could maintain concentration, adapt to changes, and "would not have difficulties interacting with others") and Dr. Rabin (who reported that Yokosh had "no more than a mild limitation" in all areas of mental functioning), whose opinions in turn were consistent with the rest of the record. Further still, the ALJ noted that Dr. Matusiak's opinion was inconsistent with

Yokosh's self-reported robust daily activities. This evidence, the ALJ concluded, "does not suggest greater than mild limitations in her ability to perform work related activities." These were reasonable bases for discounting Dr. Matusiak's opinion. *See* 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) (ALJ reasonably rejected opinion that conflicted with the medical evidence and other reports).

Yokosh argues that the ALJ's conclusion about consistency was flawed because he ignored the fact that she was diagnosed with a pain disorder. We disagree. Although the ALJ did not mention this diagnosis or use the phrase "pain disorder," he amply discussed evidence about pain. The ALJ expressly noted that Yokosh discussed her pain with Dr. Matusiak; considered her testimony that her pain limited her ability to do things like sit, stand, walk, and climb stairs; considered physical examination and imaging results that indicated Yokosh suffered from tenderness and pain; and considered that Yokosh had received pain management interventions such as injections and an ablation. The ALJ thus did not improperly "ignore [an] entire line[] of contrary evidence." *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

Second, the ALJ considered Dr. Matusiak's opinion and reasonably concluded that it was not well supported. Indeed, the opinion was not even supported by Dr. Matusiak's own treatment notes—his notes did not indicate that Yokosh had significant limitations with memory, attention, concentration, ability to interact, or mood. Nor did they indicate concern that

Yokosh could "lose control" when faced with certain stressors.

Yokosh argues that the ALJ's conclusion about supportability was flawed because he failed to discuss the P-3 Test Dr. Matusiak used, but again we disagree. Although the ALJ did not mention the test by name, he referred and cited to Dr. Matusiak's evaluation containing the test results. And in any event, the ALJ "is not required to spell out in the record every piece of evidence that he considered and then accepted or rejected . . . It is enough that [he] build a logical bridge between the evidence and his conclusions." *Crowell*, 72 F.4th at 815. The ALJ did that here.

Third, the ALJ considered the length, nature, and extent of the treatment relationship. He expressly noted that Dr. Matusiak had been counseling Yokosh for only about five months at the time he provided his opinion;[4] that their session discussions generally revolved around frustrations with her physical pain and her intimate relationship, as well as various activities in which she was involved; and that the "conservative" care being provided appeared to be appropriate and stable, given that Yokosh continued with the same course of treatment. It was reasonable for the ALJ to determine that these considerations did not justify affording Dr. Matusiak's opinion more than little weight, especially in light of the inconsistencies discussed above.

---

[4] Yokosh argues that the ALJ misrepresented the length of her relationship with Dr. Matusiak, pointing to a section of the opinion that states Dr. Matusiak had been treating her for only one month. But this is clearly a drafting error because the ALJ later explained twice that the time frame was five months.

Finally, although not expressly noted in so many words in the written decision, the ALJ was aware that Dr. Matusiak specialized in pain management counseling. Yokosh argues that the ALJ ignored Dr. Matusiak's specialization, but this information is in the record, which the ALJ reviewed. And in the written decision the ALJ consistently referred to him as "Dr. Matusiak" and noted he had a Ph.D. Under these circumstances, we are satisfied that the ALJ appropriately considered his qualifications.

It is true that we have previously remanded where an ALJ failed to acknowledge the specialty of a physician. *See Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). But those cases suffered from other issues not present in today's case. In *Larson*, for example, the ALJ "said nothing" about any of the factors used to weigh treating physician testimony. 615 F.3d at 751. And in *Gerstner*, the ALJ did not mention the physician's specialty or the nature and extent of the treatment, and he failed to acknowledge that the physician's opinion was *consistent* with other opinions in the record. 879 F.3d at 263. Here, as already explained, the ALJ did not "sa[y] nothing" about the regulatory factors in weighing Dr. Matusiak's opinion as a treating physician, and he discussed at length the inconsistencies between Dr. Matusiak's opinion and others in the record. *See Larson*, 615 F.3d at 751.

And in any event, an ALJ "need not consider explicitly every factor[.]" *Grotts v. Kijakazi*, 27 F.4th 1273, 1277 (7th Cir. 2022). We have affirmed decisions where the ALJ considered some, but not all, of the regulatory factors, as long as the reasoning was minimally articulated and supported by the record as a whole. *See, e.g., Crowell*, 72 F.4th at 815–16 (affirming

despite ALJ's failure to address one of the factors); *Elder*, 529 F.3d at 415–16 (affirming where ALJ discussed only two of the relevant factors).

In short, the ALJ's decision was more than minimally articulated and well supported, and we "will not substitute our judgment . . . by reweighing the evidence." *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

We AFFIRM the judgment of the district court.